IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROLANDO BELTRAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 5:15-CV-1019-RP |
| UNION PACIFIC RAILROAD COMPANY, | § § § | |
| Defendant. | § § § | |

### ORDER

Before the Court is Defendant Union Pacific Railroad Company's Motion for Summary Judgment. (Dkt. 42) Having reviewed the pleadings, factual record, and relevant law, the Court finds that Defendant's motion should be granted.

### BACKGROUND

Plaintiff Rolando Beltran is a Hispanic male over the age of forty-five. He asserts that he is morbidly obese. Defendant Union Pacific Railroad Company ("Union Pacific") is a common carrier operating in the State of Texas. Plaintiff was formerly an employee of Union Pacific for approximately eleven years. He began working for Union Pacific as a carman in 2004, later receiving a promotion to car foreman in 2014. In this latter capacity he was responsible for supervising the carmen at the railroad yard.

In 2010, Union Pacific terminated Plaintiff's employment after a random drug test returned a positive result for cocaine metabolites. Plaintiff concedes that he was using cocaine at the time. Union Pacific reinstated Plaintiff's employment in April 2011. Conditions placed on his reinstatement included that Plaintiff was to complete a 28-day rehabilitation program and submit to random drug testing over the course of sixty months.

Union Pacific directed Plaintiff to submit to a drug test on or around November 14, 2014, and again on November 20, 2014. The results of the first test were negative, but the second test yielded a positive result for methamphetamines. On or around November 25, 2014, Medical Review Officer Dr. Randy Barnett[1] called Plaintiff to inquire about the prescription medication he was taking. Plaintiff provided Dr. Barnett with information about his prescriptions but, according to Plaintiff, Dr. Barnett refused to hear about the over-the-counter medication Plaintiff was taking at the time. Dr. Barnett determined that none of the disclosed prescription medications would cause a false positive and thus confirmed the test's positive result. Plaintiff exercised his right to request a second test of his urine sample. A second lab performed the retesting and reported a second positive result.

Union Pacific held an investigation hearing on January 7, 2015. At this hearing, Plaintiff presented the testimony of David Neff, General Chairman of Plaintiff's labor union. Neff testified that the medications Plaintiff was taking at the time would have caused a false positive. Neff based his testimony on the written medical opinion of Dr. Michael Zeitlin, a physician recommended to Plaintiff by his brother. Two days later, Union Pacific terminated Plaintiff's employment.

Plaintiff thereafter filed charges of discrimination with the Texas Workforce Commission and the Equal Opportunity Employment Commission. After receiving a right-to-sue letter, Plaintiff filed this suit against Union Pacific alleging that Union Pacific violated the Texas Labor Code by discriminating against him on the basis of his sex, ethnicity, age, and disability.

Union Pacific filed its Motion for Summary Judgment on December 15, 2016. Its principal arguments are that Plaintiff has not demonstrated that (1) he is disabled; (2) he was terminated due to his disability; (3) he was treated less favorably than other similarly situated employees outside the

---

[1] Dr. Barnett is not an employee of Union Pacific. Rather, he is employed by or contracts with University Services, which itself contracts with Union Pacific to handle its drug testing.

protected class; and (4) Plaintiff cannot show that Union Pacific's reason for terminating him—his positive drug test—was pretextual.

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). The court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

## DISCUSSION

Plaintiff's claims arise under the Texas Commission on Human Rights Act ("TCHRA"), which prohibits discrimination in employment on the basis of race, disability, sex, and age, among

other bases. Tex. Lab. Code § 21.051. The TCHRA is analogous to federal anti-discrimination laws, and courts thus look to federal precedent in interpreting the Texas law. *Rodriguez v. Con Agra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006). Where, as here, direct evidence of discrimination is lacking,[2] courts analyze TCHRA discrimination claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jesperson v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 654 (Tex. App. 2012).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was qualified for the job; (3) he was subject to an adverse employment action; and (4) he was either replaced by someone outside the protected class or treated less favorably than others similarly situated. *Id.* If the plaintiff makes such a showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer provides such a reason, the burden shifts back to the plaintiff to establish that the employer's justification is merely a pretext for discrimination. *Id.*

Plaintiff alleges discrimination on several bases: sex (male), ethnicity (Hispanic), age (over forty-five), and disability (morbid obesity). Rather than examining whether a *prima facie* case has been established on each basis, the Court will assume that such a showing has been made and move to the second part of the analysis—whether the employer has articulated a legitimate, non-discriminatory reason for the adverse employment action. Here, Union Pacific has offered Plaintiff's positive drug test as the reason for Plaintiff's termination. Neither side has disputed that failing a drug test can provide a legitimate basis for termination. *See Hunter v. Union Pac. R. Co.*, No. CIV.A. H-11-3408, 2013 WL 3229910, at *7 (S.D. Tex. June 25, 2013) ("[I]t is well settled that an

---

[2] Plaintiff asserts in his brief that he had previously reported racial slurs to Union Pacific management, citing his deposition as evidence. (Pl.'s Resp., Dkt. 48, at 11). The deposition, however, only states that he reported a coworker's comment that he was a "drug addict." (Beltran Dep., Dkt. 42-1, at 77:13–78:9).

employer's decision to deny employment or discipline employees based on positive drug test results constitutes a non-discriminatory business reason for the adverse employment action . . . ."). Indeed, Union Pacific has argued that, as a federally regulated common carrier, it was legally *required* to take action following the drug test. In light of this justification, the burden shifts back to Plaintiff to establish a genuine dispute of material fact that Union Pacific's justification was a pretext for discrimination. *See Jesperson*, 390 S.W.3d at 654.

Plaintiff's primary argument concerning pretext is that the positive result for methamphetamine was not accurate. To support this proposition, he argues that the medications he was taking caused a false positive and that Dr. Barnett's testimony to the contrary cannot be trusted because a prior conviction undermines his credibility. Plaintiff bases the argument about the test's reliability on a brief note from Dr. Zeitlin suggesting that Plaintiff's medication could cause a false positive if the test employed by University Services could not distinguish between the use of lawful medication and the illegal drug. Dr. Zeitlin recommended retesting Plaintiff's urine using a method that could distinguish between the various methamphetamine isomers, allowing a more accurate result. The Court ordered this retesting over Union Pacific's objection; it produced a third positive result confirming the prior two.

Even if the third test had undermined the prior positive results, creating a fact dispute as to the accuracy of the test result does not suffice to create a fact dispute as to pretext. "The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir.

5

1991).[3] This principle applies with equal force to Plaintiff's attempt to undermine the accuracy of the test by arguing that Dr. Barnett's prior conviction makes his confirmation of the test result unreliable. Even if Dr. Barnett's testimony ruling out an innocent cause of the positive result was not credible, nothing in the record suggests that the decision-makers at Union Pacific were not genuinely motivated by that testimony. Indeed, nothing indicates that Union Pacific had any knowledge of Dr. Barnett's conviction or any other reason to doubt his credibility.

Plaintiff next suggests that Union Pacific's justification is not credible because it has shifted over time. According to Plaintiff, Union Pacific first "stated unequivocally that it was a positive test result," but then later explained in a letter to the chairman of Plaintiff's union that if Plaintiff "truly had a legitimate reason to be on medication or illicit drug [sic] he should have and could have revealed that to MRO Barnett . . . and [Plaintiff] would have had a prescription for such." (Pl.'s Response, Dkt. 48, at 8). Plaintiff does not explain how this constitutes a shift in Union Pacific's justifications. Nothing in the letter suggests that Plaintiff's failure to present a prescription was an additional reason for his termination. The letter merely states that Plaintiff had not provided a valid justification for the positive test result that remained the reason for his termination. No reasonable fact-finder would infer from this statement that Union Pacific's justifications had shifted.[4]

---

[3] For this reason, Plaintiff's rebuttal to the third test also fails to create a fact dispute sufficient to avoid summary judgment. (*See* Dkt. 51). Plaintiff's rebuttal features a supplemental affidavit of Dr. Zeitlin in which he avers that certain testing methods cannot distinguish between l- and d-methamphetamine isomers and points out that it is not clear what testing methodology was used for the third test. In the absence of proof that the testing facility used a specific method known as chiral chromatography, Dr. Zeitlin avers that he finds no medical basis to conclude that Plaintiff was using illicit substances as opposed to lawful medications. This is contrary to testimony of Dr. Barnett that the methodology used for confirmatory testing is, in fact, sensitive to the differences between isomers. (Barnett Dep., Dkt. 42-3, at 35:10–18). However, this fact dispute over testing methodology does not give rise to a fact dispute as to Union Pacific's motivations. *See Little*, 924 F.2d at 97.

[4] Plaintiff also notes that the chairman of an arbitration panel recommended that Plaintiff should be returned to work given the "unique circumstances" of the case. (Pl.'s Response, Dkt. 48, at 8). It is not clear how this is relevant to the issues before the Court. To the extent Plaintiff seeks to tie it to Union Pacific's allegedly shifting justifications, he has not shown that the arbitration panel spoke on behalf of Union Pacific. To the extent he uses the evidence to cast doubt on the wisdom of terminating Plaintiff's employment, the Court simply notes that "[e]mployment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform courts into personnel managers.'" *Bryant*, 413 F.3d 471, 478 (5th Cir. 2005) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)).

Plaintiff has produced no other evidence from which pretext could be inferred. Accordingly, no genuine dispute of material fact exists and Union Pacific has demonstrated that it is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant Union Pacific's Motion for Summary Judgment is hereby **GRANTED**. (Dkt. 42). Plaintiff's claims under the TCHRA are therefore **DISMISSED WITH PREJUDICE.** Defendant's Request for Hearing is **DISMISSED AS MOOT**. (Dkt. 50).

**SIGNED** on February 21, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE